IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

YZ Enterprises, Inc.,                     Case No. 3:06 CV 1301

             Plaintiff,              MEMORANDUM OPINION
                                             AND ORDER
       -vs-
                                             JUDGE JACK ZOUHARY

Colborne Corporation,

             Defendant.

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 25), to which Defendant has filed a Memorandum in Opposition (Doc. No. 29) and Plaintiff has filed a Reply (Doc. No. 33). The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331. The Court held a telephone conference on August 31, 2007 and advised counsel of this ruling. The Opinion now follows.

## BACKGROUND

In December 2004, Plaintiff entered into a contract with Defendant for the installation of a new automated production line (the "Line"). The Process Requirements Document ("PRD") set forth the specifications for the Line. On December 15, 2004, Defendant issued a Sales Order Acknowledgment ("Acknowledgment") stating the order was subject to Defendant's standard terms and conditions ("Standard Terms"). On March 24, 2005, the parties modified their agreement by entering into an addendum ("Purchase Agreement") that set forth detailed terms that superseded any contrary terms

in the Acknowledgment but otherwise left that document unchanged. The Purchase Agreement called for Defendant to provide Plaintiff "a 100% turnkey Operation" and required Defendant to "refund all monies paid to Colborne by YZ for the complete system" if Defendant failed to provide a complete and operational Line within 120 days of April 23, 2005.

Defendant failed to supply a fully operational Line by April 2005 (Moody Aff. ¶ 3) but promised to deliver missing components in June 2005, as demonstrated by Plaintiff's letter to Defendant on June 2 (Compl. Ex. B). Defendant failed to deliver all the missing components by that time (Moody Aff. ¶ 4). In February 2006, Plaintiff sent an e-mail to Defendant advising that Defendant had not met a purported target deadline of February 27 (Moody Aff. Ex. 2), which Defendant disputes (Opp. p. 7). In any event, Defendant does not dispute that the complete Line was not delivered and operational by May 2006, even if some components were delivered and made operational by then (Opp. pp. 7-8; Holtschult Aff. ¶ 19). On May 24, 2006, Plaintiff issued a notice of rejection for all "goods" that had been delivered.

Plaintiff instituted this lawsuit on May 25, 2006 seeking a refund of money paid to date for the Line as well as actual and consequential damages.

## DISCUSSION

### Summary Judgment Standard

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or

determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## Choice of Law

As a threshold matter, the Court must determine which state's law to apply in this diversity case, the law of Illinois as specified in the Standard Terms (¶ 17) or the law of Ohio where this action is brought. Plaintiff correctly notes that both states have adopted the Uniform Commercial Code (UCC) and the case law is substantially similar.

This Court has previously held:

> In a diversity action, a federal court applies the choice of law rules of the state in which the court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)*; Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir.1999)*; National Union Fire Insurance Co. v. Watts*, 963 F.2d 148, 150 (6th Cir.1992). Therefore, Ohio's choice of law rules govern in this case.
> parties to a contract to govern their contractual rights and duties. *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438, 453 N.E.2d 683 (citing Restatement of Law 2d, Conflict of Laws § 187)*; Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 477, 747 N.E.2d 206 (2001).

*Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F.Supp 2d 1028 (N.D. Ohio. 2003).

Ohio's choice of law rules give deference to the law that parties specify in their contract. No exceptions or objections were raised by the parties. Therefore, this Court will apply Illinois law.

## Plaintiff's Breach of Contract Claim

### *Breach of Contract*

Plaintiff alleges Defendant breached its contract by failing to deliver a turnkey system by the agreed deadline and thereby the subsequent deadlines.

3

Under Illinois law, to prove breach of contract, a party "must allege the existence of a contract, performance of its conditions by complainant, a breach by the defendant, and damages as a result of the breach." *Associated Underwriters of Am. Agency v. McCarthy*, 826 N.E.2d 1160, 1168 (Ill. App. 2005).

In this case, there is no genuine issue of material fact that a contract existed, as both parties alleges existence of a contract in their pleadings (Compl. ¶ 6; Counterclaim ¶ 2). Likewise, no genuine dispute exists concerning Defendant's breach. In its Opposition, Defendant concedes it had not delivered a turnkey operation by any of the deadlines the parties set (Opp. p. 10). Defendant argues however that its breach is excused by (1) Plaintiff's alleged waiver of timely performance; or (2) Plaintiff's wrongful rejection of the goods; or (3) limitations on cancellation as contained in the Standard Terms. The Court will address each of these arguments in turn.

*Waiver*

Under Illinois law, a party may waive a contractual right by intentional relinquishment. *Sexton v. Smith*, 492 N.E.2d 1284, 1287 (Ill. 1986). Waiver may be express or implied by conduct. *Id.* Silence, failure to object to a breach of contract or conduct inconsistent with an intention to enforce the right may all result in waiver. *See, e.g., Martz v. MacMurray Coll.*, 627 N.E.2d 1133, 1135 (Ill. App. 1993). However, Illinois courts have indicated a party cannot repeatedly assure another party it will cure its late or deficient delivery and then argue that the other party has waived its right to object to breach of contract. *Board of Educ., Sch. Dist. No. 90, Cook County v. United States Fid. and Guarantee Co.*, 253 N.E.2d 663, 667 (Ill. App. 1969) (Parties "with great propriety and consistency, could urge the contractors to finish the work under the contract, and afterward accept it. All they would waive in such a case would be the performance on a fixed day and nothing else.").

4

Further, parties in such situations retain the "clear right to insist upon and recoup such damages as they may have sustained by reason of the non-compliance with the contract, if the delay was not caused by their fault." *Id.* at 427.

Here, Plaintiff does not dispute it agreed to delay the specific date for delivery of the completely operational Line. *See, e.g.*, Reply 3-4. Nevertheless, Plaintiff's acceptance of later dates, which the Defendant urged by its assurances, did not extinguish Plaintiff's right to reject the goods and seek damages under the contract.

Defendant argues that because Plaintiff waived successive deadlines, no deadline existed (Opp. p. 12). However, the cases Defendant cites for the proposition that Plaintiff waived its right to timely performance of the contract are distinguishable because, in those cases, the claimant silently accepted delayed performance or otherwise acted inconsistently with an intention to enforce the contractual right. *See, e.g., Bartels v. Denler*, 333 N.E.2d 640 (Ill. App. 1975) (plaintiff waived his right to enforce a non-compete provision in an employment contract by allowing defendant to take a competing position without objection of any kind).

In this case, Plaintiff did not silently accept missed deadlines or otherwise act in a manner suggesting that it intended to relinquish its right to timely performance. *See, e.g.*, Plaintiff's letter and e-mail to Defendant, dated June 2, 2005 and February 24, 2006, respectively (Compl. Ex. B; Motion for Summary Judgment Ex. G). No genuine dispute exists that, in its conduct under the contract, Plaintiff expressed its displeasure with the delays and an urgent desire to have the project completed timely.

Therefore, even if Plaintiff waived specific deadlines for performance, no genuine dispute exists that it retained its right under the contract to sue for damages upon Defendant's breach.

***Rejection of Goods/Revocation of Acceptance of Goods***

Defendant next argues Plaintiff failed to seasonably reject the Line under 810 Ill. Comp. Stat. 5/1-204(3) ("An action is taken 'seasonably' when it is taken at or within the time agreed."). Defendant argues the acceptance of delayed delivery created an indefinite contract, which subjected Plaintiff's conduct to the reasonableness standard of § 5/1-204(3). The Court does not need to reach this question because it finds Plaintiff properly **revoked** its acceptance of the goods, discussed below. The UCC provides the same remedies for either course of action. 810 Ill. Comp. Stat. 5/2-711; *see also* 810 Ill. Comp. Stat. 5/2-608(3) ("A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.").

Under Illinois case law interpreting 810 Ill. Comp. Stat. 5/2-608(1)(b),[1] a buyer may revoke its acceptance of goods if the seller delays satisfactory performance and provides repeated assurances of its ability to cure the defect or deficiency. *See, e.g., Magnum Press Automation v. Thomas & Betts*, 758 N.E.2d 507, 510 (Ill. App. 2001) ("It is not unreasonable to assume that a buyer may delay revocation upon the seller's assurances."); *N. Am. Lighting, Inc., v. Hopkins Mfg. Corp.*, 37 F.3d 1253, 1258-59 (buyer was entitled to revoke system two years after delivery because seller's assurances induced buyer to continue working with seller to upgrade system). The time period for proper revocation is extended by the seller's assurances. 810 Ill. Comp. Stat. 5/2-608 cmt.4.[2] The buyer

---

[1] "The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it . . . without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

[2] "Since this remedy will generally be resorted to only after attempts at adjustment have failed, the reasonable time period should extend in most cases beyond the time in which notification of breach must be given, beyond the time for discovery of non-conformity after acceptance and beyond the time for rejection after tender."

6

must show (1) reasonably induced acceptance; (2) substantial impairment, subjectively and objectively; and (3) timely revocation. *N. Am. Lighting*, 37 F.3d at 1257-59.

In this case, no genuine dispute exists that Plaintiff properly revoked its acceptance of the Line that Defendant delivered and installed. As discussed above, Defendant repeatedly missed deadlines for delivering and installing components of the Line. It was reasonable for Plaintiff to rely on Defendant's superior knowledge of its own capacity and ability to manufacture and repair the Line. Next, Plaintiff was substantially impaired by the delayed performance which hindered its ability to reach the production levels cited in the Purchase Agreement. Finally, the time period for proper revocation was extended by Defendant's assurances. *See, e.g.*, Plaintiff's e-mail to Defendant expressing Plaintiff's reliance on promises of delivery (Motion for Summary Judgment Ex. I).

Therefore, there is no genuine issue of material fact that Plaintiff properly revoked its acceptance of the goods considering the repeated delays and assurances in delivery and repairs and Plaintiff's statements that it intended to reject the Line if the situation was not remedied.

### *Limitation on Plaintiff's Right to Cancel Order*

Defendant's Standard Terms (¶ 14) require Defendant's consent for cancellation.

However, the more specific Purchase Agreement, which "supersedes anything to the contrary set forth . . . in Colborne's Standard Terms and Conditions," calls for Colborne to refund all monies paid to Colborne if "the complete system is not operational and fails to meet within 120 calendar days all production specifications as outlined." *See Brzozowski v. N. Trust Co.*, 618 N.E.2d 405, 409 (Ill. App. 1993) ("[W]here one intention is expressed in one provision of a contract and a conflicting intention appears in another provision, full effect should be given to the more principal and specific provision, and the general provision should be subjected to such modification or qualification as the

specific provisions make necessary."); *see also Wilson v. Wilson*, 577 N.E.2d 1323, 1328 (Ill. App. 1991) (specific provisions prevail over general provisions on same subject matter).

This right to a refund and return of the goods supersedes the general term that requires Defendant's consent for cancellation of the contract. Plaintiff was invoking this right, which was not time-restricted but rather depended on Defendant's failure to supply a complete Line that was operational as defined by the parties in the Purchase Agreement and PRD. As discussed above, at most, Plaintiff waived specific deadlines for installation of the complete Line but did not waive its right to demand satisfactory performance of the contract. Further, the Purchase Agreement states that certain items were backed by a "money-back guarantee." The intent of the parties, then, was to allow Plaintiff to return the goods if Defendant failed to timely deliver an operational Line. This specific language supersedes the cancellation restriction.

Therefore, Plaintiff is entitled to Summary Judgment on its claim of breach of contract because it has established the absence of a genuine dispute of material fact that Defendant breached the contract and that Plaintiff rightfully revoked its acceptance of the delivered goods.

### Scope and Amount of Damages

#### *Actual and Consequential Damages*

Plaintiff seeks recovery for actual and consequential damages, but does not request summary judgment on these damages. Defendant, in its Reply, asks the Court to bar recovery for such damages based on a limitation in the Standard Terms.

There is a genuine issue of material fact about the extent and availability of damages. Defendant's Standard Terms bar "actual or consequential damages," but Plaintiff cites Defendant's

later assurances that it would address Plaintiff's financial losses stemming from the delays. This contested issue is appropriately left for determination by the trier of fact.

## Counterclaim

### *Breach of Contract*

Defendant argues Plaintiff breached the contract by unreasonably rejecting the goods, causing Plaintiff to waste resources in trying to meet the production deadlines. Because the Court has decided, above, that Defendant breached the contract by failing to fulfill its obligations, Defendant is not entitled to recover for breach of contract.

### *Unjust Enrichment*

Defendant also argues it is entitled to recover under a theory of unjust enrichment because of the extra maintenance and other personal services provided by Defendant to make the Line operational, services not covered by the Purchase Agreement (Counterclaim ¶ 2).

Under Illinois law, "where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704-05 (Ill. App. 2005). If a claim for unjust enrichment includes an allegation that the parties' relationship is also covered by a contract, then unjust enrichment is unavailable. *Id.* at 704.[3]

Here, Defendant does not dispute the parties' relationship is governed by an enforceable contract (Counterclaim ¶ 2). Further, even assuming the claim was not barred for this reason, the

---

[3] Ohio law provides a somewhat different standard, but the result would be the same. *See Weiper v. W.A. Hill & Assoc.*, 104 Ohio App. 3d 250, 261-62 (1995) ("A party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment."). Even if the Court accepts Defendant's argument in its Reply at p. 16 that Ohio law permits recovery under unjust enrichment when specific services are not covered by the parties' contract, the Court finds the "turnkey" provision shows the parties' intent to include in the contract any services necessary to make the Line operational.

9

Purchase Agreement specifically states Defendant's obligation is to provide a 100% turnkey operation. Defendant clearly agreed to provide whatever services or support were required to render the Line operational.

Therefore, Defendant's Counterclaim for unjust enrichment is dismissed.

## CONCLUSION

For the reasons stated above, the Court grants-in-part and denies-in-part Plaintiff's Motion for Summary Judgment. The Court finds Defendant is liable for breach of contract and dismisses Defendant's Counterclaim. The Court reserves for trial the scope and amount of damages Plaintiff may recover, including any return of funds to Plaintiff.

IT IS SO ORDERED.

                                          *s/ Jack Zouhary*
                                          JACK ZOUHARY
                                          U. S. DISTRICT JUDGE

September 25, 2007